**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.

Ohio Security Insurance Company,

    Plaintiff,

v.

E3 Restaurant, LLC, Jeff LaRoche,
Adam La Roche, and Jennifer Kent,

    Defendants.

---

**COMPLAINT FOR DECLARATORY JUDGMENT**

---

Plaintiff Ohio Security Insurance Company ("OSIC"), for its Complaint against Defendants E3 Restaurant, LLC ("E3"), Jeff LaRoche, Adam LaRoche, and Jennifer Kent (collectively, "Defendants"), alleges as follows:

**INTRODUCTION**

This is a declaratory judgment action under 28 U.S.C. §§ 2201-02 that arises out of certain claims for sex discrimination and retaliation in violation of Title VII of the Civil Rights Act, disability discrimination in violation of the Americans with Disabilities Act, wrongful discharge, negligent supervision and retention, tortious interference with contract, outrageous conduct, and invasion of privacy against E3 and Jeff LaRoche by Jennifer Kent ("Kent"). E3 and Jeff LaRoche have sought indemnity for and a defense against Kent's claims under a policy of insurance issued by OSIC to E3. As discussed in greater detail below, OSIC seeks a declaration that it is not obligated to provide Defendants with indemnity for, or a defense against, Kent's claims.

## THE PARTIES, JURISDICTION, AND VENUE

1. OSIC is a New Hampshire corporation with its principal place of business in Massachusetts, and is licensed to and does conduct insurance business in the State of Colorado.

2. E3 is a Colorado Limited Liability Company authorized to do business in Colorado. Its principal place of business is 701 Yampa Street, Steamboat Springs, Colorado 80487.

3. Jeff LaRoche is a resident of the State of Colorado and is employed by E3 in a managerial position.

4. Adam LaRoche is a resident of the State of Colorado and is the principal owner of E3. Adam LaRoche is also Jeff LaRoche's brother.

5. Jennifer Kent is a resident of the State of Colorado and was employed as a server by E3.

6. There is complete diversity among the parties and the amount in controversy, exclusive of interest and costs, is in excess of $75,000. Accordingly, jurisdiction is proper in this Court pursuant to 28 U.S.C. §1332.

7. The acts giving rise to this suit all occurred within the District of Colorado. For that reason, venue is proper in this Court pursuant to 28 U.S.C. §1391.

## THE POLICY

8. OSIC issued a Commercial General Liability ("CGL") policy, Policy No. BKS55960932 (the "Policy") to named insured E3 for relevant consecutive policy periods of December 26, 2013 through December 26, 2014, December 26, 2014 through December 26, 2015, and December 26, 2015 through December 26, 2016. The terms, conditions, and exclusions of the

Policy were, in all pertinent regards, identical over the three Policy terms. A copy of the Policy for the 2015-2016 term is attached hereto as Exhibit 1, and copies of the declaration pages for the 2013-2014 and 2014-2015 terms are attached hereto as Exhibit 2 and Exhibit 3, respectively.

7. For all three Policy terms, the Policy, subject to its terms, conditions, limitations and exclusions, provided CGL coverage up to $1 million per occurrence for bodily injury and property damage, up to $1 million for personal and advertising injury, and up to $2 million in the aggregate. *See* Ex. 1, Commercial General Liability Declarations; *see also* Exs. 2 & 3.

8. The Policy also included an Employment Practices Liability ("EPL") Coverage form (CG 89 02 12 08). The EPL Coverage was provided on a Claims Made and Reported Basis. *See* Ex. 1, Employment Practices Liability Declarations – Revised.

9. For the 2013-2014 Policy term, the EPL Coverage limits were $10,000 per claim and in the aggregate, with a $5,000 per-claim deductible. *See* Ex. 2.

10. Effective April 9, 2015, the EPL Coverage limits for the 2014-2015 and 2015-2016 Policy terms were $250,000 per claim and in the aggregate, with a $5,000 per-claim deductible. *See* Ex. 1, Employment Practices Liability Declarations – Revised.

### CGL Coverage

11. The Policy's CGL Coverage form provided, in pertinent part, as follows:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**
**SECTION I - COVERAGES**
**COVERAGE A- BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.   Insuring Agreement**
   **a.**   We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.

3

> However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.
>
> **b.** This insurance applies to "bodily injury" and "property" damage only if:
> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
> […]

Ex. 1, *Commercial General Liability Coverage Form, Section I (Coverage A)(1)*.

12. The Policy's CGL Coverage form defined "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id., Section V (Definitions)(13)*.

13. Further, the Policy's CGL Coverage form defined "bodily injury" as "physical injury, sickness or disease sustained by a person. This includes mental anguish, mental injury, shock, fright or death that results from such physical injury, sickness or disease." *Id., (3), as modified by CG8810 04/13*.

14. As it pertains to an LLC like E3, an "insured" was defined under the Policy's CGL Coverage form as follows:

> **SECTION II - WHO IS AN INSURED**
>
> **1.** If you are designated in the Declarations as:
> * * * *
> **c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

*Id., Section II (Who Is An Insured (1)(c)*.

15. The Policy's CGL Coverage form contains the following exclusions:

4

**2.   Exclusions**

This insurance does not apply to:

    **a.   Expected Or Intended Injury**
"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

\*\*\*

    **d.   Workers' Compensation And Similar Laws**
Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

    **e.   Employer's Liability**
"Bodily Injury" to:
(1)   An "employee" of the insured arising out of and in the course of:
    (a)   Employment by the insured; or
    (b)   Performing duties related to the conduct of the insured's business; or
(2)   The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract."

*Id.*, Section I(2)(Exclusions).

16.   The Policy's CGL Coverage form also included an Endorsement entitled "Employment – Related Practices Exclusion" that stated, in relevant part:

    **A.**   The following exclusion is added to Paragraph **2. Exclusions** of **Section I - Coverage A Bodily Injury and Property Damage Liability**:
This insurance does not apply to:
"Bodily injury" to:
**(1)**   A person arising out of any:
    **(a)**   Refusal to employ that person;

5

   **(b)**  Termination of that person's employment; or
   **(c)**  Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or
 **(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.

This exclusion applies:
 **(1)** Whether the insured injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment:, during employment or after employment of that person;
 **(2)** Whether the insured may be liable as an employer or in any other capacity; and
 **(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

*Id.*, Employment-Related Practices Exclusion, Endorsement CG 21 47 12 07.

### EPL Coverage

17. The Policy's EPL Coverage form read, in pertinent part, as follows:

**SECTION I - COVERAGE**

**A.** **INSURING AGREEMENT**

**1.** We will pay on behalf of the insured for "damages" in excess of the Deductible arising out of any "employment practices" to which this insurance applies. We have no obligation under this insurance to make payments or perform acts or services except as provided for in this paragraph and in Item B. below.

**2.** This insurance applies to such "damages" only if:
 **a.** The "damages" result from "claims" made by "employees", "leased workers," "temporary workers," former "employees or applicants for employment with you;
 **b.** The "employment practices" take place in the "coverage territory";
 **c.** Such "employment practices" occurred after the Retroactive Date, if any, shown in the Declarations and before the end of the "policy period"; and

6

      **d.**    A "claim" is both:
- **(1)** First made against any insured, in accordance with paragraph 3. below, during the "policy period" or any Extended Reporting Period we provide under SECTION VII - EXTENDED REPORTING PERIODS; and
- **(2)** Reported to us either.
  - **(a)** During the "policy period" or within thirty (30) days thereafter, or
  - **(b)** With respect to any "claim" first made during any Extended Reporting Period we provide under SECTION VII -EXTENDED REPORTING PERIODS, during such Extended Reporting Period.

**3.** A "claim" will be deemed to have been made at the earlier of the following times:
- **a.** "When notice of such "claim" is received and recorded by you or by us, whichever comes first; or
- **b.** When we make settlement in accordance with paragraph 8.3. below.

**4.** All "claims" for "damages", based on or arising out of:
- **a.** One "employment practice", or
- **b.** "Interrelated" "employment practices"

by one or more insureds shall be deemed to be one "claim" and to have been made at the time the first of those "claims" is made against any insured.

*Id., Employment Practices Liability Coverage Form Section I(A)).*

18. The Policy's EPL Coverage form provided, under certain circumstances, for an "Extended Reporting Period," as follows:

**SECTION VII – EXTENDED REPORTING PERIODS**

**A.** We will provide Extended Reporting Periods, as described below, if:
1. This insurance is cancelled or not renewed; or
2. We renew or replace this Coverage Part with insurance that:
   - **a.** Has a Retroactive Date later than the date shown in the Declarations of this Coverage Part; or
   - **b.** Does not apply on a claims-made basis.

**B.** Extended Reporting Periods do not extend the "policy period" or change the scope of coverage provided. They apply only to "claims" as the result of "employment practices" which occurred after the Retroactive Date, if any, shown in the

7

>           Declarations and before the end of the "policy period."  Once in effect, Extended Reporting Periods may not be cancelled.
> **C.**   Extended Reporting Periods do not reinstate or increase the Limits of Insurance.
> **D.**   A Basic Extended Reporting Period is automatically provided without additional charge.  The period starts with the end of the "policy period" and lasts for:
>   **1.**   Five years with respect to "claims" arising out of "employment practices" which had been properly reported to us during the "policy period" in accordance with provision **1.** of Paragraph **B. Duties in Event of "Employment Practices" or "Claims",** under **SECTION VI – CONDITIONS;** and
>   **2.**   Sixty days with respect to "claims" arising from "employment practices" not previously reported to us.
> **\*\*\***

*Id.*, *Section VII.*

19. An Extended Reporting Period was not triggered for this Claim.

20. The Policy's EPL Coverage form defined "claim" as follows:

> **SECTION VIII – DEFINITIONS**
>
> **B.**   "Claim" means written or oral notice presented by:
>   **1.**   Any "employee", "leased worker", "temporary worker", former "employee" or applicant for employment by you; or
>   **2.**   The EEOC or any other Federal, state or local administrative or regulatory agency on behalf of such person in item 1. immediately preceding, alleging that the insured is responsible for "damages" as a result of injury arising out of any "employment practices".
> "Claim" includes any civil proceeding in which either "damages" are alleged or fact finding will take place, when either is the actual or alleged result of any "employment practice" to which this insurance applies.  […]

*Id.*, *Section VIII(B).*

21. The Policy's EPL Coverage form defined "damages" as follows:

> **D.**   "Damages" means monetary amounts to which this insurance applies and which the insured is legally obligated to pay as judgments, awards and settlements to which we have agreed in writing. "Damages", include:
>   **1.**   "Pre-judgment interest" awarded against the insured on that part of the judgment we pay,

8

  **2.** To the extent allowed by law, any portion of a judgment or award that represents a multiple of the compensatory amounts or punitive or exemplary damages, and

  **3.** "Legal fees" unless the "claim" is seeking solely equitable relief, injunctive relief, declarative relief or any other relief or recovery other than money.

"Damages" do not include:

**(1)** Civil, criminal, administrative or other fines or penalties;

**(2)** Equitable relief, injunctive relief, declarative relief or any other relief or recovery other than money;

**(3)** "Legal fees" when solely equitable relief, injunctive relief, declarative relief or any other relief or recovery other than money is sought; or

**(4)** Judgments or awards because of acts deemed uninsurable by law.

*Id.*

22. As it pertained to an LLC like E3, an "insured" was defined under the EPL Coverage form as follows:

### SECTION II - WHO IS AN INSURED
**A.** If you are designated in the Declarations as:

     \* \* \* \*

  **3.** A limited liability company, you are an insured. Your current and former members are also insureds, but only with respect to the conduct of your business. Your current and former managers are insureds, but only with respect to their duties as your managers.

*Id.* at *Section II(A)(3)).*

23. The Policy's EPL Coverage form excluded coverage for, among other things, claims arising directly or indirectly from any: (a) dishonest, criminal, or fraudulent acts; and (b) bodily injury, as follows:

  **6.** **Dishonest, Criminal Or Fraudulent Acts, Or Failure To Comply With Law**

   **a.** Dishonest:, criminal or fraudulent acts of the insured; or

   **b.** The willful failure by the insured or with the insured's consent to comply with any law or any governmental or administrative order or regulation relating to "employment

9

practices". Willful, as used in this exclusion, means acting with intentional or reckless disregard for such employment related laws, orders or regulations.

The enforcement of this exclusion against any insured under this policy shall not be imputed to any other insured.

**7.    Bodily Injury**
"Bodily injury"

*Id*. at *Section I(C)(3), (6), (7)*.

24.    The Policy's EPL Coverage form defined "bodily injury" as follows:

"Bodily injury" means physical injury to the body, sickness or disease sustained by a person as the result of direct physical injury to the body, including death resulting from any of these at any time.  "Bodily injury" does not include mental anguish that results from an "employment practice."

*Id*. at *Section VIII(A))*.

**The Claim**

25.    On May 6, 2016, Kent filed a lawsuit against E3 and Jeff LaRoche in the United States District Court for the District of Colorado, captioned *Kent v. E3 Restaurant LLC and Jeff LaRoche*, Case No. 1:16-cv-01039 (the "Lawsuit").

26.    The Lawsuit alleges that Kent was hired as a server at E3 on December 5, 2013.

27.    The Lawsuit alleges that on May 7, 2014, Kent was subjected to inappropriate sexual contact, while at E3, by Jeff LaRoche, and that Jeff LaRoche regularly engaged in inappropriate conduct with female patrons and servers while at the restaurant.

28.    The Lawsuit alleges that Kent complained to E3 management about the May 7, 2014 incident shortly after it occurred.

29.    The Lawsuit alleges that, as a result of the May 7, 2014 incident, Kent experienced emotional distress and anxiety, and was diagnosed with bipolar disorder.

30. The Lawsuit alleges that Kent was removed from the work schedule at E3 in February 2015.

31. On February 17, 2015, Kent filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against E3. A copy of the Charge of Discrimination is attached hereto as Exhibit 4.

32. In the Charge of Discrimination, Kent alleged that E3 discriminated against her on the basis of sex and engaged in retaliation, arising out of inappropriate sexual conduct by Jeff LaRoche and E3 management's response to her complaints. *See id.*

33. E3 was given notice of the Charge of Discrimination on or about February 25, 2015. *See* Notice of Charge of Discrimination, attached hereto as Exhibit 5.

34. Although the EEOC Charge of Discrimination met the definition of a "claim" under the Policy's EPL Coverage, *see* ¶ 18, above, E3 did not report the Charge of Discrimination to OSIC.

35. The Lawsuit alleges that the EEOC issued a "Notice of Right to Sue" to Kent on March 21, 2016.

36. The May 6, 2016 Complaint filed by Kent in the Lawsuit includes the following Claims for Relief:

    a. Sex Discrimination in Violation of Title VII against E3;

    b. Retaliation in Violation of Title VII against E3;

    c. Discrimination in Violation of the ADA against E3;

    d. Retaliation in Violation of the ADA against E3;

    e. Negligent Supervision and Retention against E3;

      f.    Wrongful Discharge in Violation of Public Policy against E3;

      g.    Tortious Interference with Contract against Jeff LaRoche;

      h.    Outrageous Conduct/Intentional Infliction of Emotional Distress against Jeff LaRoche

37. As discussed above, the allegations of the Complaint arise out of the alleged inappropriate sexual conduct by Jeff LaRoche that was also the subject of Kent's EEOC Charge of Discrimination.

38. The Complaint seeks compensatory damages for mental and emotional distress, back pay and benefits, reinstatement or front pay and benefits, injunctive and/or declaratory relief, punitive damages, and attorneys' fees.

39. E3 first made a claim (the "Claim") to OSIC under the Policy regarding Kent's allegations on May 19, 2016.

40. On August 31, 2016, OSIC issued a letter to E3, advising that the Claim was not covered and reserving all of its rights under the Policy and at law.

## Claim for Relief – Declaratory Relief

41. OSIC incorporates herein by this reference the allegations set forth in Paragraphs 1 through 40 above, as if each were more fully set forth herein.

## Coverage Under the CGL Coverage Part

42. OSIC contends that the Claim and the Lawsuit are not covered under the Policy's CGL Coverage part for at least the following reasons.

43. Subject to its terms, conditions, limitations and exclusions, the Policy's CGL Coverage part affords coverage to the named insured, E3; E3's members, but <u>only</u> with respect to

the conduct of E3's business; and E3's managers, but only with respect to their duties as E3's managers.

    a. Although Jeff LaRoche is a member of E3, the conduct by Jeff LaRoche giving rise to the Lawsuit arise out of alleged inappropriate sexual conduct and is therefore unrelated to the conduct of E3's business.

    b. Accordingly, Jeff LaRoche is not an insured under the Policy's CGL Coverage part.

44. The Policy's CGL Coverage part affords coverage only for bodily injury or property damage arising out of an "occurrence," defined as an "accident," and the Lawsuit does not allege an "occurrence."

45. The Policy's CGL Coverage part excludes coverage for bodily injury or property damage expected or intended by any insured.

46. The Policy's CGL Coverage part excludes coverage for the insured's obligations under workers' compensation, disability benefits, or similar laws.

47. The Policy's CGL Coverage part excludes coverage for bodily injury to an employee of the insured arising out of and in the course of employment.

48. The Policy's CGL Coverage part excludes coverage for bodily injury arising out of "Employment Related Practices."

## Coverage Under the EPL Coverage Part

49. OSIC contends that the Claim and the Lawsuit are not covered under the Policy's EPL Coverage part for at least the following reasons.

50. Subject to its terms, conditions, exclusions and limitations, the Policy's EPL Coverage part affords coverage to the named insured, E3; E3's current and former members, but only with respect to the conduct of E3's business; and E3's managers, but only with respect to their duties as E3's managers.

    a. Although Jeff LaRoche is a member of E3, the conduct by Jeff LaRoche giving rise to the Lawsuit arise out of alleged inappropriate sexual conduct and is therefore unrelated to the conduct of E3's business.

    b. Accordingly, Jeff LaRoche is not an insured under the Policy's EPL Coverage part.

51. The Claim was not timely reported to OSIC, as it was first made when Kent filed the EEOC Charge of Discrimination in February 2015, but was not reported by E3 until after Kent filed the Lawsuit in May 2016.

52. The Policy's EPL Coverage part excludes coverage for claims arising out of dishonest, criminal, or fraudulent acts.

53. The Policy's EPL Coverage part excludes coverage for claims arising out of the failure to comply with any law related to employment practices.

54. The Policy's EPL Coverage part excludes coverage for claims arising out of bodily injury.

55. There is an actual and justiciable controversy between the Defendants and OSIC with respect to the rights of Defendants under the Policy and OSIC's obligations thereunder.

56. Accordingly, OSIC seeks a declaration that the Claim and the Lawsuit are not covered under the Policy and that it owes no duty to defend or indemnify Defendants E3, Jeff LaRoche and Adam LaRoche in the Lawsuit.

WHEREFORE, OSIC prays that this Court enter an order declaring that:

A. Jeff LaRoche is not an "insured" as defined by the Policy for purposes of the Claim and the Lawsuit and, therefore OSIC has no duty to defend or indemnify Jeff LaRoche with regard to the Claim or the Lawsuit.

B. There is no coverage under the CGL Coverage part of the Policy for the Claim or the Lawsuit, and, therefore, OSIC has no duty to defend or indemnify E3, Jeff LaRoche, or Adam LaRoche with regard to the Claim or the Lawsuit.

C. There is no coverage under the EPL Coverage part of the Policy for the Claim or the Lawsuit, and, therefore, OSIC has no duty to defend or indemnify E3, Jeff LaRoche, or Adam LaRoche with regard to the Claim or the Lawsuit.

D. OSIC is entitled to its attorneys' fees and costs of the action, as appropriate.

E. For such other relief as the Court deems just and proper.

Respectfully submitted this 14th day of November, 2016.

                                        FORAN GLENNON PALANDECH
                                      PONZI & RUDLOFF PC


                                      By:  s/   Jeri J. Wettestad
                                            Amy M. Samberg
                                            Jeri J. Wettestad
                                            1600 Broadway, Suite 2425
                                            Denver, Colorado 80202
                                            Telephone:  (720) 336-2233
                                            asamberg@fgppr.com
                                             jwettestad@fgppr.com

                                      *Attorneys for Defendant Ohio Security Insurance Company*

16